1  Matthew Becker, SBN 262816
2  BECKER LAW PRACTICE
   333 University Ave #200
   Sacramento, CA 95825
3  beckerlawpractice@gmail.com
   Ph. (916)591-5150
4  Fx. (916)352-6299
   Attorney for Plaintiff:
5  Dana and Michael Bryant d/b/a Crossing the Jordan

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8  _____
                                          )  Case No 3:20-cv-3243
9  Dana Bryant and Michael Bryant, d/b/a  )
   Crossing the Jordan,                   )  COMPLAINT FOR INJUNCTIVE RELIEF
10                Plaintiffs,             )  DAMAGES
                                          )   1) First Amendment Right to Peaceably
11       vs.                              )      Assemble;
                                          )   2) Fourth Amendment Unreasonable
12 Gavin Newsom, in official capacity as  )      Seizure of Person
      Governor of California;             )   3) Fourth Amendment Unreasonable
13 Xavier Becerra, in official capacity as Attorney )   Seizure of Property
      General of California;              )   4) Fifth Amendment Takings
14 Sonia Y. Angell, in official capacity as State )   5) Eighth Amendment Excessive Fines
      Public Health Officer;              )      and Cruel and Unusual Punishment
15 Dr. Sundari Mase, in official capacity as Public )   6) 14th Amendment Right to Earn a
      Health Officer of County of Sonoma; )      Living
16 Mark Essick, in official capacity as Sheriff of )   7) 14th Amendment Equal Protection
      Sonoma County;                     )      Between Essential and Non-Essential
17 Susan Gorin, in official capacity as Sonoma )      Businesses
      County Supervisor;                  )   8) 14th Amendment Privileges or
18 David Rabbitt, in official capacity as Sonoma )      Immunities Right to Travel
      County Supervisor;                  )   9) Violation of Civil Rights for Causes
19 Shirlee Zane, in official capacity as Sonoma )      of Action 1-8
      County Supervisor;                  )  10) Cal. Const Art 1, § 1 Right to
20 James Gore, in official capacity as Sonoma )      Acquire Property
      County Supervisor;                  )  11) Cal. Const Art 1, § 7 Due Process
21 Lynda Hopkins, in official capacity as Sonoma )  12) Cal. Const Art 1, § 13 Unreasonable
      County Supervisor;                  )      Seizure of Person
22 Rainer Navarro, in official capacity as Chief of )  13) Cal. Const Art 1, § 13 Unreasonable
      Santa Rosa Police Department;       )      Seizure of Property
23 Santa Rosa, California,                )  14) Cal. Const Art 1, § 19 Just
                                          )      Compensation
24                Defendants.             )
                                          )
25 _____       )

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
Dana and Michael Bryand d/b/a Crossing the Jordan v. Newsom et al --- Case No. 3:20-cv-3243

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff brings this action to stop the named Defendants from violating Plaintiff's rights under the First Amendment Right to Peaceably Assemble for the purpose of exchange of goods and services, the Fourth Amendment right to be free from unreasonable seizure of persons, the Fourth Amendment right to be free from unreasonable seizure of property, the Fifth Amendment right to Just Compensation for taking of property, the Eighth Amendment right to be free from unreasonable fines and cruel and unusual punishment, the Fourteenth Amendment's right to Due Process to earn a living, the Fourteenth Amendment's right to Equal Protection under the laws, the Fourteenth Amendment's right to Privileges or Immunities to travel, the Cal Const Art 1 § 1 right to liberty to acquire property, the Cal Const Art 1, § 7 right to Due Process for denial of all rights listed in this complaint, the Cal Const Art 1, § 13 right against unreasonable seizure of persons, the Cal Const Art 1, § 13 right against unreasonable seizure of property, the Cal Const Art 1, § 19 right to just compensation in advance of taking of property.

Plaintiff seeks injunctive relief in the form of ORDERS from the Court declaring the Stay-At-Home orders (broadly defined) as unconstitutional. Plaintiff also seeks compensatory damages from all defendants not immune to such under the 11th Amendment. Plaintiff also intends to seek permission to amend the complaint to demand punitive damages from all Defendants not immune to such under the 11th Amendment where appropriate. Plaintiff also seeks attorney fees under 42 U.S.C. § 1983 and California Law as appropriate.

In the alternative and in addition to the above, Plaintiffs assert that the plain terms of the Defendants' orders indicate that they properly an "essential service".

**PRELIMINARY BACKGROUND**

1)      Plaintiffs are founders of Crossing the Jordan, a non-profit 501(c)(3) entity which runs a drug addiction recovery residential program in Sonoma County, California and which

runs six thrift stores for the sole purpose of providing the funding for the drug addiction recovery residential program which uses the program students as workers at the stores so that they can learn job skills.

2)   Plaintiffs initially closed their thrift stores when the Defendants' Stay-at-Home orders were imposed.

3)   When the closure of the thrift stores began to create a critical financial problem for being able to fulfill the mission of their non-profit of providing shelter for the homeless, Plaintiffs decided to reopen their thrift stores with precautions to protect the public from undue risk of spread of the SARS-nCoV-2 virus, feeling that this was a better option than dumping nearly 100 drug addicted homeless people onto the streets of their hometown.

4)   The Santa Rosa Police Department began to harass them and threaten Crossing the Jordan with fines and with threats of arrest and criminal prosecution of Michael Bryant.

5)   On Monday, May 11, 2020, Santa Rosa Police Department told Michael Bryant that they would arrest him the following day if the Crossing the Jordan's job skills training portion of their program for drug addiction counseling and treatment and sheltering were not closed down.

6)   On Tuesday, May 12, 2020, Santa Rosa Police Department called Michael Bryant and asked him to come to the police station, whereupon they arrested, cited and released Michael Bryant on charges of violating the shutdown orders.

7)   On Tuesday, May 12, 2020, Santa Rosa Police Department told Michael Bryant that they would arrest him again the following day if the Crossing the Jordan's job skills training portion of their program for drug addiction counseling and treatment and sheltering were not closed down.

8)   After briefly coming to their senses about the health effects on their city and county of having approximately 100 drug addicted homeless people being dumped onto the streets and indicating that they would NOT fine or arrest the founders of Crossing the Jordan, Santa Rosa Police Department has now again indicated that they intend to start strictly enforcing the Stay-at-Home shutdown orders.

9)   Plaintiffs now file suit for the purpose of seeking injunctive relief that they may operate their thrift stores so as to be capable of continuing their primary mission of providing a drug addiction recovery residential program for the homeless people of the Santa Rosa region.

10)  Plaintiff has taken substantial changes to business operations to protect public health to whatever extent they are capable and are willing to undergo other changes that could be recommended by the Defendants that are reasonable.

11)  Some of these changes already undertaken include:

   a.   Limiting the number of patrons in the store;

   b.   Insisting that all employees and patrons wear masks;

   c.   Having hand sanitizer stands located at the entry and throughout the stores;

   d.   Insisting that all cashiers use hand sanitizer between every customer;

   e.   Holding for 72 hours any products prior to selling and taking what steps the are aware of that would decrease the likelihood of any viral particles remaining on such products;

   f.   Posting large signage out in front of their stores and throughout their stores reminding people to follow basic health guidelines;

12)  Throughout the history of the United States, there has been a nearly unspoken right to earn a lawful living. The closest that this issue came to be discussed in court decisions

was in *Lochner v. New York*, 198 US 45 (1905) and its progeny where a liberty of contract was found to exist under the 14th Amendment Due Process clause. While this case was subsequently overturned upon threat to the court by President Roosevelt to "pack" the Court, the overturning was on the specific issue of minimum wage laws and whether there is a general liberty of contract that could be violated by State use of police powers, *<u>subject to the requirement that this use of the police power must be reasonable and not arbitrary</u>*.

13)   Sometime in 2019, a novel virus emerged in China, now known in the scientific community as SARS-nCoV-2, which causes a disease now known as CoViD-19. CoViD-19 (hereinafter COVID) is known to, for some fraction of persons who contract the SARS-nCoV-2 virus to cause Acute Respiratory Distress Syndrome (ARDS) and other symptoms.

14)   At some point prior to the end of January 2020, this virus had spread from China to the United States.

15)   Although even at the end of February 2020, Dr. Fauci, Director of the National Institute of Allergy and Infectious Disease was still saying that this was unlikely to impact the USA in a severe way and that people should go about their normal lives, by early March 2020, the USA population had entered into a state of panic.

16)   On March 4, 2020, Defendant Gavin Newsom declared a State of Emergency regarding the disease known as COVID-19.

17)   On March 17, 2020, Sonoma County Public Health Official, Defendant Dr. Sundari Mase issued an order that arbitrarily determined certain businesses to be "essential" and that all other businesses not favored by Defendant Dr. Sundari Mase be ordered closed.

No provision was made for compensation to such businesses for the regulatory taking of all value from the property.

18) Defendant Dr. Sundari Mase has issued several followup orders and amendments to orders with the most recent being issued on May 7, 2020.

19) A Document on the Sonoma County Emergency website, located at https://socoemergency.org/order-of-the-health-officer-no-19-09-shelter-in-place-extended/ purporting to be Order 19-09 states that among other essential businesses are: "v. Businesses providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;".

20) On March 20, 2020, Defendant Gavin Newsom issued a state-wide Shelter in Place order which arbitrarily determined certain businesses to be "essential" and that all other businesses not favored by Defendant Newsom be ordered closed. No provision was made for compensation to such businesses for the regulatory taking of all value from the property. See EXECUTIVE ORDER N-33-20, which adopted as an order from Gavin Newsom the Order issued by Defendant Angell on the same date of March 19, 2020.

21) Defendants Newsom and Angell have issued numerous followup orders.

22) A document dated April 28, 2020, located at https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf purports to list businesses that are supposed to be considered essential. It has a SECTION 13: INDUSTRIAL, COMMERCIAL, RESIDENTIAL, and SHELTERING FACILITIES AND SERVICES which contains Paragraph 10, which reads: "Workers managing or servicing hotels or other commercial and residential buildings that are used for COVID-19 mitigation and containment measures, treatment measures, provide accommodation

for essential workers, or providing housing solutions, including measures to protect homeless populations."

23) According to the "Fundemonium newsletter" that was publicly distributed to their customer base, on May 1, 2020, Sonoma County Health Officer declared a toy store "Fundemonium" as a specially favored "essential business" – even permitting them to allow customers to enter the store – even though toy stores do not fit within any ordinary reading of either State or County emergency orders. Apparently the Sonoma County Health Officer had previously to May 1 granted a limited exemption from the order to Fundemonium. This is prior to the May 7, 2020 Order titled "Amendment No. 1 to Order of the Health Officer of the County of Sonoma No. C19-09" which provides for toy stores to be allowed to do curbside pickup business.

24) Plaintiffs had counsel reach out to County Counsel about being granted an exemption and were told that no such exemption would be provided to Crossing the Jordan and that County Counsel interpreted the Orders as permitting Plaintiffs' drug addiction recovery residential program but not the stores that provide the funding for the existence of the residences.

25) As of the latest available information, Sonoma County has had 4 deaths allegedly caused by the SARS-nCoV-2 virus and has only a tiny fraction of its hospital beds in use.

26) The Sheriff Department of each County is mandated by statute to enforce the orders of the local County Health Official.

27) Santa Rosa Police Department also has authority to enforce the orders by virtue of Plaintiff and Plaintiff's business locations being within the city of Santa Rosa.

28) These Shelter-In-Place orders criminalized people going out of their places of abode for reasons other than those specifically enumerated and effectively amounted to a collective seizure of the liberty of movement of the entire population of California.

29) These Shelter-In-Place orders furthermore arbitrarily chose certain businesses, of which Plaintiffs' business is one, that were mandated to be closed, while permitting others who were favored as so-called "essential" businesses to remain open – and even in the case of the "Fundemonium" toy store, grant special exemptions using procedures not listed in the Orders as even being an available option.

30) These Shelter-In-Place orders were implemented based on extremely limited information, much of which has turned out to be inaccurate. Among this information was a belief, unsupported by science then, and contradicted by science now, that the SARS-nCoV-2 virus had a fatality rate of between 5-10% for those infected with the virus.

31) With recent scientific studies now contradicting the unscientific "model" based speculation of fatality rates and the utterly misleading narrative being portrayed daily by the news media, the time has come to challenge in court the reasonableness of the decisions to shut down our society's economic capabilities and to end the prohibition on Plaintiffs' ability to earn a living and fulfill their pursuit of happiness in helping to house the homeless and provide addiction counseling rather than dump a ton of homeless addicts onto the streets of their hometown.

## PARTIES

32) Plaintiffs Dana and Michael Bryant d/b/a Crossing the Jordan are small business founders in Sonoma County that houses homeless in Santa Rosa and which funds this housing of homless and providing of mental health and drug addiction counseling

through a series of six thrift stores in Sonoma County (three in Santa Rosa and three outside the city limits but still within Sonoma County). Crossing the Jordan is a non-profit 501(c)(3) organization.

33) Defendant Gavin Newsom is the Governor of the State of California. He issued an order on March 19, 2020 that effectively orders Plaintiffs' businesses to be shut down indefinitely.

34) Defendant Xavier Becerra is the Attorney General of the State of California. He is responsible for the enforcement of the laws of the State of California and is required to be noticed in any action under California law seeking to challenge the constitutionality of any California law.

35) Sonia Y. Angell is the Public Health Official of the State of California and issued guidelines and orders that effectively orders Plaintiffs' businesses to be shut down indefinitely.

36) Defendant Sundari Mase is the Public Health Officer of Sonoma County.

37) Defendant Mark Essick is the Sheriff of Sonoma County.

38) Defendant Rainer Navarro is the Chief of the Santa Rosa Police Department. He, by and through his agent officers, has specifically threatened Michael Bryant with repeated arrests if Crossing the Jordan does not immediately shut down.

39) Defendants Susan Gorin, David Rabbitt, Shirlee Zane, James Gore, Lynda Hopkins are the supervisors on the San Mateo County Board of Supervisors.

40) Santa Rosa is an incorporated city located in Sonoma County, California

**JURISDICTION AND VENUE**

41) The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Plaintiff alleges an imminent violation of its rights under the Constitution of

the United States.  It has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

42) The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

43) Venue is proper in this judicial district under 28 U.S.C. § 1391(b). All Defendants other than Gavin Newsom, Xavier Becerra, and Sonia Y. Angell are residents of and/or perform their official duties in this district.  Defendants Newsom, Becerra, and Angell assert to have authority by virtue of their offices over Plaintiff and Plaintiff's business. In addition, a substantial part of the events giving rise to the claims in this Complaint arose in this district, because the prohibition of Plaintiffs exercising their fundamental rights will be enforced in this district.  Plaintiffs reside in this district as well.

**FACTS**

44) The SARS-CoV-2 virus (hereinafter CoV) infected the first human estimated in late fall or early winter of 2019, likely in the city of Wuhan, China.

45) Those infected with the CoV are considered to have Corona-Virus-Disease-2019, commonly referred (and referred hereinafter) as COVID or COVID-19.

46) CoV spread through unknown mechanism through the population and from someone who travelled from China to the USA.

47) CoV likely caused its first fatality in the USA in Santa Clara County California in early February 2020.

48) Until late February 2020, Dr. Anthony Fauci was still telling the people of the United States that the CoV was unlikely to be much of a threat and that people should go about their normal business.

49) By early March, 2020, news media reports were that CoV was causing a fatality rate of over 5% of those who become infected.

50) After the CoV caused a significant number of deaths in a nursing home facility in Washington State, the media began calling for action from the government.

51) Shortly thereafter, Defendants began to issue shelter-in-place orders, placing criminal penalties on those who would violate these orders.

52) Defendants have declared it a criminal act for any person to keep open a place of business that falls outside of those favored as what Defendants arbitrarily deemed "essential services".

53) Defendants have provided at least one arbitrary exception to the Orders – Toy store Fundemonium, but refuse to grant a similar exception to Plaintiffs.

54) The decision to issue the shelter in place orders (hereinafter referred to as shutdown orders) was made with insufficient information to justify these extreme measures.

55) Recent studies in Germany and from Stanford University and USC/LADPH and NY State have shed light on the actual infection-fatality rates. Additional studies are expected to come out frequently over coming days and weeks.

56) The German study showed antibody presence in such a large percentage of the population that the inferred infection fatality rate approximately 0.37%.

57) The Stanford study showed antibody presence in Santa Clara County in such a large percentage of the population that the inferred infection fatality rate is between 0.1%-0.2%.

58) The USC study is being publicly claimed as showing that the infected percentage of the population is over 50 times that which is being publicly reported in the news media, indicating, like the German and Stanford studies, that the actual infection fatality rate is

a small fraction of what the news media is generally reporting as the Case Fatality Rate (CFR).

59) The New York study apparently is showing an infection fatality rate of somewhere in the range of 0.5%.

60) CDC has indicated on their web page that as of April 28, 2020, they are finally beginning serology studies, but has as of the filing of this complaint, not published any data from these studies.

61) CDC admits on their website that serology studies are probably necessary to determine the actual infection fatality rate and to determine how serious COVID-19 really is.

62) Defendants claim that Plaintiffs' business is "non-essential".

63) This designation of non-essential status means that Defendants claim it to be unlawful for Plaintiffs to travel to their place of business for the purpose of conducting business.

64) This designation of non-essential status means that Defendants claim it to be unlawful for Plaintiffs to engage in their trade for the purpose of earning a living.

65) This designation of non-essential status means that Plaintiffs' business locations have essentially been seized by Defendants without individualized suspicion of anything other than practicing a trade deemed by Defendants to be non-essential, combined with the arbitrary and nonsensical discriminatory refusal to grant Plaintiffs an exemption similar to the exemption they granted to a toy store.

66) Plaintiffs have not received compensation, nor the ability to seek trial by jury for the determination of amount of compensation prior to the seizure of their business locations.

67) Plaintiffs are prohibited from leaving their place of abode for reasons other than those which Defendants permit.

68) Plaintiffs are prohibited from peaceably assembling with others for the purpose of exchanging goods and services that are ordinarily engaged in in a free society.

69) Plaintiffs are prohibited from travelling freely.

70) Plaintiffs face fines or potential fines and loss of their business license for engaging in normal living. Such fines are excessively above the Constitutionally permissible amount of ZERO and constitute cruel and unusual punishment for engaging in ordinary affairs.

71) Defendants' denial of Plaintiffs' right to earn a living is arbitrary and capricious and utterly without reason for differentiation compared to many other situations which Defendants permit, such as a toy store, or supermarkets, liquor stores, marijuana shops, and standing in line outside Lowe's or Home Depot where frequently no social distancing is practiced.

72) Defendant Gavin Newsom's declaration of a State of Emergency was issued more than 60 days ago and is lawfully expired.

73) Plaintiffs have decided that upon getting the shutdown orders lifted that Plaintiffs will change certain business practices to minimize the risk of transmission of the SARS-nCoV-2 virus in the following manner:

    a.  Limiting the number of patrons in the store;

    b.  Insisting that all employees and patrons wear masks;

    c.  Having hand sanitizer stands located at the entry and throughout the stores;

    d.  Insisting that all cashiers use hand sanitizer between every customer;

    e.  Holding for 72 hours any products prior to selling and taking what steps the are aware of that would decrease the likelihood of any viral particles remaining on such products;

f.   Posting large signage out in front of their stores and throughout their stores reminding people to follow basic health guidelines;

g.   Sanitizing all shopping carts and other surfaces that are likely to be commonly touched;

h.   Have an employee ask all who wish to enter the store if they have any symptoms and to exclude from entry any person who has symptoms consistent with the CoViD-19 disease.

## CAUSES OF ACTION

**Cause of Action #1**
**42 U.S.C. § 1983 Denial of First Amendment Right to Peaceably Assemble**
**Defendants: All Defendants**

74)   Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

75)   Plaintiffs would like to be able to peaceably assemble with those who would be their customers to exchange goods and services as they normally would in a free society.

76)   The right to peaceably assemble is a fundamental right guaranteed under the United States Constitution. The proper standard for review of a law or order which would prohibit such is strict scrutiny.

77)   The discrimination that prohibits Plaintiffs' business locations from operating while permitting a toy store, lines outside of Home Depot, or the local marijuana shop is not based on any compelling governmental interest.

78)   The discrimination that prohibits Plaintiff's business from operating in a manner that all but eliminates touching of surfaces by multiple people is not narrowly tailored when the government permits person after person after person to touch the same ATM pad at the local Walmart while cashiers use the same pair of gloves to scan item after item after

item, to say nothing of the toy store that received special outside-the-text-of-the-orders designation as a government favored "essential" business.

79)   Plaintiffs additionally contends that a fair reading of County Order C19-09 and Amendment 1 thereto as well as a fair reading of the State Health Officer's Essential Critical Infrastructure Workers list shows that Plaintiffs retail thrift stores should be viewed as a necessary permitted aspect of their sheltering of the homeless and providing services to economically disadvantaged persons. As such, all law enforcement agencies should be enjoined from issuing citations, fines, or engaging in arrests of Plaintiffs for the continued operations of these stores.

80)   Permitting Plaintiffs to run their business in a manner that is consistent with the extra safeguards that Plaintiffs have employed and/or intend to employ is a less restrictive alternative to the complete shutting down of Plaintiffs' business – and the requirement of wearing masks and using basic sanitation efforts is more effective than lockdown is anyways.

81)   There is no "pandemic" exception to the First Amendment.

82)   There is no "pandemic" exception to the Fourth Amendment.

83)   There is no "pandemic" exception to the Fifth Amendment takings clause's requirement for just compensation.

84)   There is no "pandemic" exception to the Eighth Amendment's prohibition on excesive fines and cruel and unusal punishment.

85)   There is no "pandemic" exception to the Equal Protection Clause of the 14th Amendment.

86)   There is no "pandemic" exception to the Priviliges or Immunities Clause of the 14th Amendment.

87) There is no "pandemic" exception to the Due Process clause of the 14th Amendment with regard to fundamental rights.

88) There is no "pandemic" exception to the California Constitution's prohibition on taking property without just compensation, nor its guarantee of due process, nor its guarantee against unreasonable seizure of person or proptery, nor its guarantee of the right to pursue the acquisition of property.

89) Plaintiffs have planned to make no less than 8 itemized changes to their business practices upon reopening in order to minimize the risk of spreading the CoV virus at the thrift stores that generate the revenue that Plaintiffs need in order to be capable of maintaining their drug addiction recovery residential program for the nearly 100 persons who they house and feed and counsel to..

90) Plaintiffs are suffering emotional distress and loss of income caused by the loss of their fundamental rights involved in peaceably assembling for the purpose of exchanging goods without fear of excessive fines and cruel and unusual jail so that they can avoid seeing their life work of housing and feeding and counseling the least fortunate among us rather than going out of business and creating a health and community disaster by dumping nearly 100 drug addicted homeless people onto the streets.

91) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired and unconstitutional and unenforceable and that they may lawfully reopen for business so they may continue their life's mission. Plaintiffs further pray for actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as permitted by State law.

**Cause of Action #2**
**42 U.S.C. § 1983 Unreasonable Seizure of Property**
**Defendants: All Defendants**

92) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

93) Plaintiff has a property interest in their business premises and in their business.

94) Defendants have neither a warrant nor any exception to the warrant requirement as justification for this seizure.

95) Defendants have not paid reasonable compensation for the property.

96) Defendants have prohibited the use or access to that property in a manner that amounts to a seizure within the meaning of the 4th Amendment.

97) Defendants have no individualized articulable suspicion of Plaintiffs engaging in any act that is not ordinarily lawful on their business properties. Indeed, all acts Plaintiffs are suspected of engaging in are acts which Plaintiffs are lawfully permitted to do except as Defendants allege are now prohibited by their unconstitutional orders.

98) Plaintiffs additionally contends that a fair reading of County Order C19-09 and Amendment 1 thereto as well as a fair reading of the State Health Officer's Essential Critical Infrastructure Workers list shows that Plaintiffs retail thrift stores should be viewed as a necessary permitted aspect of their sheltering of the homeless and providing services to economically disadvantaged persons. As such, all law enforcement agencies should be enjoined from issuing citations, fines, or engaging in arrests of Plaintiffs for the continued operations of these stores.

99) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for

actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as

permitted by State law.

**Cause of Action #3**
**42 U.S.C. § 1983 Unreasonable Seizure of Persons**
**Defendants: All Defendants**

100) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

101) Plaintiffs are under order to not leave their abode except for specified government approved reasons.

102) Plaintiffs do not feel free to leave for purposes other than the Defendants arbitrary grants of permission.

103) Defendants have no individualized suspicion of any basis for restraining Plaintiffs' liberty to travel at will.

104) The length of the detention far exceeds the transitory and brief period permitted for suspicionless detention permitted by the US Supreme Court in *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990).

105) Even the Attorney General of the United States, William Barr, has commented that we are all effectively on house arrest. This is a seizure of persons.

106) Defendants possessed neither a warrant nor any exception to the warrant requirement for this seizure.

107) Plaintiffs have suffered actual economic losses and emotional distress as a result of the unlawful confinement.

108) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen

1

2

3

for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for

actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as

permitted by State law.

4

5

**Cause of Action #4**
**42 U.S.C. § 1983 – 5th Amendment Taking without Compensation**
**Defendants: All Defendants**

6

7

8

109) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as

if fully set forth herein.

9

110) Plaintiff has a property interest in their business and in their business locations.

10

11

111) Defendants have prohibited the use or access to that property in such a manner and to

such an extent that this amounts to a taking within the meaning of the 5th Amendment.

12

13

14

15

16

17

18

19

112) Plaintiffs additionally contends that a fair reading of County Order C19-09 and

Amendment 1 thereto as well as a fair reading of the State Health Officer's Essential

Critical Infrastructure Workers list shows that Plaintiffs retail thrift stores should be

viewed as a necessary permitted aspect of their sheltering of the homeless and

providing services to economically disadvantaged persons. As such, all law

enforcement agencies should be enjoined from issuing citations, fines, or engaging in

arrests of Plaintiffs for the continued operations of these stores.

20

21

113) Defendants have not paid nor offered to pay ANY compensation for the taking of this

property, to say nothing of the actual requirement of reasonable compensation.

22

23

24

25

26

114) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home

orders are lawfully expired, and regardless of whether or not the orders are expired, the

orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen

for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for

27

28

actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as

permitted by State law.

**Cause of Action #5**
**42 U.S.C. § 1983 Excessive Fines / Cruel and Unusual Punishment**
**Defendants: All Defendants**

115) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as

if fully set forth herein.

116) Plaintiffs faces a possibility of up to six months of incarceration in jail plus a fine of

$1,000 plus penalty assessments for a potential total of nearly $5,000 for each day that

they remain open for business rather than go out of business and dump nearly 100 drug

addicted homeless people on the streets of Santa Rosa.

117) The Santa Rosa police department informed Plaintiffs on May 11, 2020 that they intend

to issue a citation for each day that Plaintiffs remain open for business rather than close

up shop and send the people they care for out onto the streets to sleep and do drugs.

118) Plaintiffs have a proper business license and all required permits to engage in this

business.

119) Plaintiffs have planned to make no less than 8 itemized changes to their business

practices in order to minimize the risk of spreading the CoV virus.

120) It is unconscionable that a business manager could face ruinous fines and months of

incarceration for attempting to earn a living in that business manager's chosen

profession when there are zero indications that a communicable disease has ever even

been present within the business premises.

121) To put a person in a choice between risking incarceration for months or forcing one into

unemployment and dumping nearly 100 drug addicted homeless persons onto the

streets; Such is an arbitrary punishment that is wholly unreasonable and indeed cruel.

Never before in the history of California has an entire class of persons been subjected to this choice with an indefinite and ever-delayed period of forcing such decisions on anyone as has been forced on Plaintiff. It is also therefore unusual – especially in light of the unequal enforcement of these same rules against large corporations such as Walmart, Costco, and Home Depot – and a toy store that was given special outside-the-concept-of-the-order favoritism.

122) Plaintiffs additionally contends that a fair reading of County Order C19-09 and Amendment 1 thereto as well as a fair reading of the State Health Officer's Essential Critical Infrastructure Workers list shows that Plaintiffs retail thrift stores should be viewed as a necessary permitted aspect of their sheltering of the homeless and providing services to economically disadvantaged persons. As such, all law enforcement agencies should be enjoined from issuing citations, fines, or engaging in arrests of Plaintiffs for the continued operations of these stores.

123) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as permitted by State law.

**Cause of Action #6**
**42 U.S.C. § 1983 Denial of Due Process (14th Amendment) (liberty to earn a living)**
**Defendants: All Defendants**

124) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

125) Plaintiffs' fundamental right to liberty to earn a living is being denied.

126) The restrictions on Plaintiffs' liberty is arbitrary and without rational basis, and is neither based on a compelling governmental interest, nor narrowly tailored to achieve such interest, and is not using the least restrictive means.

127) Plaintiffs have shown no signs of having contracted CoV or having the COVID disease.

128) Defendants have no basis to claim that this disease is substantially more deadly than many other communicable diseases for which they have not locked down society, most notably, regular outbreaks of seasonal influenza virus. The government interest in preventing the spread of the SARS-nCoV-2 virus is not significantly greater than that of the flu. This does not rise to a "compelling governmental interest" that would be required under a review of strict scrutiny.

129) Plaintiffs are at risk of fines and punishment for exercising this liberty that are so severe and disproportionate that they constitute a denial of the fundamental liberty to earn a living.

130) Plaintiffs are engaged in making a living by operating a non-profit 501(c)(3) corporation that shelters and counsels homeless addicts and funds these drug addiction recovery residential programs by running 5 thrift stores in and around Sonoma County.

131) Plaintiffs have already implemented or planned to implement no less than 8 itemized changes to their business practices upon reopening in order to minimize the risk of spreading the SARS-nCoV-2 virus at their thrift stores.

132) Therefore, since there is a way for Plaintiff's business to operate while minimizing the risk of causing spread of the virus, there are less restrictive means by which any governmental interest at stake could be achieved. Indeed, there is little evidence at all to support the Government's claims that the shutdown is even helping at all in the long run compared to the list of things that Plaintiffs have indicated they are willing to do.

133) Also, in light of the amount of congregation of persons at the Sonoma County's Health Officer's arbitrarily favored toy store in addition to nearly all Walmart, Home Depot, Costco, and other such "big-box" stores, as well as touching of products and checkout ATM keypads by a multitude of persons without sanitation therein and the repeated touching of products by the cashier without changing gloves between each customer, it is clear that the mandated complete closure of Plaintiffs' stores is, by comparison, arbitrary, capricious, and unreasonable.

134) Plaintiffs additionally contends that a fair reading of County Order C19-09 and Amendment 1 thereto as well as a fair reading of the State Health Officer's Essential Critical Infrastructure Workers list shows that Plaintiffs retail thrift stores should be viewed as a necessary permitted aspect of their sheltering of the homeless and providing services to economically disadvantaged persons. As such, all law enforcement agencies should be enjoined from issuing citations, fines, or engaging in arrests of Plaintiffs for the continued operations of these stores.

135) Plaintiffs' business gross revenues dropped to zero as a result of Defendant's arbitrary, capricious, and unduly burdensome Stay-at-home-orders that impose threats of unreasonable fines and unconscionably cruel and unusual punishment of jail for engaging in what would normally be a legal business operation.

136) Plaintiff is suffering damages of emotional distress caused by the loss of liberty.

137) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for

actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as

permitted by State law.

**Cause of Action #7**
**42 U.S.C. 1983 – 14th Amendment Equal Protection of Law**
**Defendants: All Defendants**

138)  Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

139)  Plaintiffs' business of thrift stores will have a sanitized environment that is substantially less likely to result in the spread of the SARS-nCoV-2 virus than the frequently unsanitary environments of Walmart, Costco and Home Depot where clerks are rarely seen using hand sanitizer between customers and the Point-of-Sale keypad is even less rarely cleaned.

140)  Plaintiffs have planned to make no less than 8 itemized changes to their business practices in order to minimize the risk of spreading the CoV virus at their thrift stores as laid out in the FACTS section of this complaint.

141)  Plaintiffs notes that at nearly every Walmart, Home Depot, grocery store and marijuana dispensary: that patrons of such stores are frequently touching various objects and leaving them unsanitized for the next person to touch, including but not limited to pay station ATM keypads; that the cashiers at such stores are touching items from each consecutive patron without changing gloves or using hand sanitizer in between; that patrons of such stores are frequently seen without masks or other methods of preventing the spread of the SARS-nCoV-2 virus; that patrons of such stores frequently are required to stand in lines outside the stores to wait until occupancy levels are low enough for the stores to admit more patrons, and that in such waiting lines that "social

distancing" is frequently not observed by many. Plaintiffs will not permit any such

conduct at their thrift stores.

142) There is no evidence whatsoever that the SARS-nCoV-2 virus discriminates in favor of

spreading at small businesses such as that of Plaintiff where extra precautions can be

taken in favor of sanitation and safety, NOR is there evidence that the virus

discriminates against spreading at specially-declared-but-not-really "essential

businesses like toy stores with little kids running around, nor at such big box stores as

Costco, Walmart, or Home Depot where there is no evidence that the virus

discriminates against spreading in the entry lines to such stores where frequently the

guidelines of social distancing are not honored; NOR is there evidence that the virus

discriminates against spreading at other "approved" small businesses such as marijuana

dispensaries, where again, person after person may touch objects in such drug dealing

operations while standing in non-distanced lines or at the counter.

143) In short, no rational basis exists as to why Plaintiff's small business should be treated

so harshly as to be ordered closed indefinitely under penalty of cruel and unusual jail

for operating a normally lawful business nor the excessive and ruinous fines that come

with the same citations, while Walmart, Home Depot, Costco, or the locally authorized

marijuana dispensary are permitted to remain open alongside that ever-so-important

"essential" toy store; indeed in light of the extra precautions that can be taken by

Plaintiffs in how business is operated, as opposed to the lack of such sanitary environs

at the government-favored toy and big box stores that it would make more sense to

permit Plaintiffs' business to be in operation than the cesspool of germ contamination

that occurs at the check-out stations, and lines outside of the big box stores.

144) Plaintiffs additionally contends that a fair reading of County Order C19-09 and Amendment 1 thereto as well as a fair reading of the State Health Officer's Essential Critical Infrastructure Workers list shows that Plaintiffs retail thrift stores should be viewed as a necessary permitted aspect of their sheltering of the homeless and providing services to economically disadvantaged persons. As such, all law enforcement agencies should be enjoined from issuing citations, fines, or engaging in arrests of Plaintiffs for the continued operations of these stores.

145) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as permitted by State law.

**Cause of Action #8**
**42 U.S.C. 1983 – 14th Amendment Privileges or Immunities**
**Defendants: All Defendants**

146) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

147) It is a privilege or immunity of any citizen of the United States to travel freely.

148) Defendants' orders prohibit Plaintiffs from traveling to other similarly situated (government-non-approved) businesses.

149) Defendants' orders prohibit this freedom of travel to Plaintiffs' business locations for purposes of business transactions pertaining to Plaintiffs' business, but may permit such travel for other reasons of which the Government approves.

150) This right to travel is a fundamental right and so the proper standard is strict scrutiny.

151) The burden imposed for traveling to disfavored locations vs favored locations is not a content-neutral restriction on where a person may travel; the discrimination is suspect in nature and so the proper standard of review is strict scrutiny.

152) The so-called epidemic caused by the SARS-nCoV-2 virus creates a governmental interest more similar to that of the common seasonal influenza virus than to bubonic plague, a disease which the courts of California have stated was not of sufficient governmental interest to prevent freedom of travel for a group merely the size of a neighborhood, much less the entire State. This is not a compelling governmental interest.

153) Even if there is a compelling governmental interest, which Plaintiff contends there is not, the prohibition of travel for purposes other than authorized is not narrowly tailored to suit such ends. The permission of travel to such big box stores as Walmart, Costco, and Home Depot, and the conditions therein which have rightly drawn the attention and ire of members on the internet – this makes clear that the prohibition of travel to a small business such as that operated by Plaintiff means that the distinction is not narrowly tailored, nor less restrictive than necessary. The permission to travel to a toy store makes clear that the classification of "essential" vs. non-essential is nothing but a farce and is not narrowly tailored.

154) Plaintiffs pray for relief in the form of injunctive relief that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further pray for actual damages, attorney fees pursuant to 42 U.S.C. 1988, and attorney fees as permitted by State law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Cause of Action 9**
**California Civil Code § 52.1 – Violation or Attempted Violation of All Rights Asserted in Any of Causes of Action #1-#8**
**Defendants: All Defendants.**

155)  Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

156)  California Civil Code § 52.1 states that there is a private right of action for any denial or attempt at denial of a right granted by the US Constitution through use of threat or coercion.

157)  Defendants have by means of threat of imprisonment and threat of ruinous fines denied, or attempted to deny, Plaintiffs the full enjoyment of each right granted by the US Constitution which are at issue in Causes of Actions #1 through #8, inclusive.

158)  Plaintiffs pray for relief in the form of injunctive relief pursuant to Cal. Civ. Code § 52.1(c) that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further request that the Court issue the required warning encoded in Cal. Civ. Code § 52.1(e). Plaintiffs further pray for actual damages and attorney fees pursuant to Cal. Civ. Code § 52.1(i) and Cal. Code Civ. Pro § 1021.5.

**Cause of Action #10**
**Cal. Civ. Code § 52.1 - California Constitution, Art. 1, § 1 – Right to Enjoy Liberty, Acquire and Possess Property, and Pursuing Happiness**
**Defendants: All Defendants**

159)  Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

160) Defendants have, by and through their orders with threats of incarceration and ruinous fines, deprived Plaintiffs of their inalienable rights to acquire property or to possess their property in any meaningful sense.

161) Defendants have, by and through their orders with threats of incarceration and ruinous fines, deprived Plaintiffs of their inalienable right to enjoy liberty to travel to and from their place of business for the purpose of engaging in exchange of goods or to travel to and from the establishments of other government disfavored businesses for the purpose of exchanging goods.

162) Defendants have, by and through their orders with threats of incarceration and ruinous fines, deprived Plaintiffs the pursuit of happiness that comes from engaging in their inherently lawful business operations of running thrift stores so as to fund their real calling of running a drug addiction recovery residential program to those in need of such.

163) Defendants orders have been discriminatory in favor of certain businesses of the arbitrary classification of "essential" as well as toward a toy store that clearly does not fall within any natural reading of the definition of "essential" as laid out in Defendants' orders.

164) Defendants have acted in excess of what the California Courts have permitted in regards to the laws of quarantine. Plaintiffs are not suspected, with any reason, of having infectious disease; NOR reasonably suspected of having been in contact with infectious disease; the application of quarantine laws is not appropriate and the restrictions on Plaintiff's liberties do not stand scrutiny under the law or the Constitution of California.

165) Plaintiffs pray for relief in the form of injunctive relief pursuant to Cal. Civ. Code § 52.1(c) that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further request that the Court issue the required warning encoded in Cal. Civ. Code § 52.1(e). Plaintiffs further pray for actual damages and attorney fees pursuant to Cal. Civ. Code § 52.1(i) and Cal. Code Civ. Pro § 1021.5.

**Cause of Action #11**
**Cal. Civ. Code § 52.1 - California Constitution, Art. 1, § 7 – Denial of Liberty and Property without Due Process**
**Defendants: All Defendants**

166) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

167) Plaintiffs are prohibited from enjoying the right to operate their business, even if taking precautions to adapt to the legitimate state interests in avoiding the spread of the SARS-nCoV-2 virus. Other businesses are not so restrained because they are arbitrarily in a category deemed "essential" – including such businesses as marijuana dispensaries. And yet at least one other – a toy store – is arbitrarily differentiated as "essential" even though under the plain language of the orders a toy store does not meet this standard.

168) Plaintiffs are arbitrarily and capriciously denied any meaningful opportunity to show that their business can be run in a manner that is equally safe to the manner in which Walmart, Costco, Home Depot, and the local marijuana shops operate or the ability even if such procedures existed to permit him to be able to operate upon such a showing. Nor, even upon specific request for such was Defendant County Health Officer nor Defendants Board of Supervisors member nor Defendant Sheriff nor

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Santa Rosa Police Department willing to deem Plaintiffs' business "essential" even though they had previously granted such distinction to a toy store and even though granting such status would make sense in light of trying to control the unchecked spread of a virus. The goal of slowing the rate of infection of SARS-nCoV-2 cannot possibly be helped by putting into motion a sequence of events that would lead inevitably to the dumping of nearly 100 drug addicted homeless people onto the city streets.

169) Plaintiffs pray for relief in the form of injunctive relief pursuant to Cal. Civ. Code § 52.1(c) that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further request that the Court issue the required warning encoded in Cal. Civ. Code § 52.1(e). Plaintiffs further pray for actual damages and attorney fees pursuant to Cal. Civ. Code § 52.1(i) and Cal. Code Civ. Pro § 1021.5.

**Cause of Action #12**
**Cal. Civ. Code § 52.1 - California Const., Art. 1, § 13 – Unreasonable Seizure of Person**
**Defendants: All Defendants**

170) Plaintiff incorporates all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

171) United States Attorney General William Barr commented that we are all effectively on House Arrest. This is a seizure of persons under threat of criminal prosecution.

172) Plaintiffs are not free to leave their house for nearly any purpose other than to spend money at government favored businesses. Plaintiffs cannot drive to visit friends. Plaintiffs cannot travel to Plaintiff's business to conduct exchange of goods and services that are ordinarily lawful. Plaintiffs cannot drive to church or participate in

church services. All these "cannots" are enforced by threat of criminal prosecution, just as a person on House Arrest can be incarcerated in a county jail for violating the terms of the house arrest by leaving for an unapproved purpose.

173) Plaintiffs are suspected of no wrongdoing nor of being infected with communicable disease nor of having had contact with anyone who has been been specifically reasonably suspected of being infected with communicable disease. The detention of Plaintiffs is instead part of a society-wide detention.

174) The suspicionless detention of this large swath of persons is being done for a period of time which exceeds that transitory and brief period of time which the US Supreme Court has authorized for suspicionless detentions in *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990).

175) Plaintiffs pray for relief in the form of injunctive relief pursuant to Cal. Civ. Code § 52.1(c) that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further request that the Court issue the required warning encoded in Cal. Civ. Code § 52.1(e). Plaintiffs further pray for actual damages and attorney fees pursuant to Cal. Civ. Code § 52.1(i) and Cal. Code Civ. Pro § 1021.5.

**Cause of Action #13**
**Cal. Civ. Code § 52.1 - California Const., Art. 1, § 13 – Unreasonable Seizure of Property**
**Defendants: All Defendants**

176) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

177) Plaintiffs have been denied use and enjoyment of business premises to such an extent as to effectively render such property worse than useless since rent is still required to be paid pursuant to contracts which Defendants have not relieved Plaintiff's obligations of.

178) Plaintiffs have not received just compensation for the denial of the right to use and enjoyment of the property as required by the 5th Amendment and Cal. Const. Art 1, § 19.

179) Plaintiffs were not been provided a jury trial prior to the taking of the just compensation for this denial of right to use the property as required by Cal. Const. Art. 1, § 19.

180) The denial of the right to use and enjoy property without either compensation or due process that is guaranteed in the California Constitution amounts to a taking.

181) A taking without compensation is a seizure.

182) Defendants have no individualized reasonable suspicion or probable cause that the subject property has been or would be used for any purpose more dangerous to the public health than the local marijuana sales shop where surfaces are present which are touched by repeated customers without sanitization in between or the local toy store which has no greater claim to being "essential" than Plaintiffs' stores.

183) Plaintiffs pray for relief in the form of injunctive relief pursuant to Cal. Civ. Code § 52.1(c) that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further request that the Court issue the required warning encoded in Cal. Civ. Code § 52.1(e). Plaintiffs further pray for actual damages and attorney fees pursuant to Cal. Civ. Code § 52.1(i) and Cal. Code Civ. Pro § 1021.5.

**Cause of Action #14**

**Cal. Civ. Code § 52.1 - California Const., Art. 1, § 19 – Taking without Compensation Defendants: All Defendants**

184) Plaintiffs incorporate all other paragraphs of this complaint into this Cause of Action as if fully set forth herein.

185) Big box stores like Walmart, Costco, and Home Depot are allowed to stay open for business, in spite of the airborne disease spreading conditions therein.

186) Marijuana shops are permitted to remain open to sell Federal Schedule 1 controlled substances in stores that do not necessarily sterilize every surface between touching of those surfaces by customers who want to get high.

187) A local toy store is permitted to remain open without appearing to fit into any category of "essential" business, nor explicitly listed as a business authorized to open under Defendants' orders.

188) Meanwhile Plaintiffs have been deprived access to business premises for the purpose of engaging in an occupation that, with proper care that Plaintiffs have implemented or intend to implement, would greatly decrease the risk of spreading the SARS-nCoV-2 virus and which is ordinarily a normal and permissible trade in all 50 states and under federal law.

189) This deprivation of access for the intended (and really ONLY) use of such property amounts to a total denial of value during the duration of prohibition of reasonable use.

190) The value of the property that is being denied is the expected gross revenue during the time of denial of access plus the future lost revenue for the two store locations that Plaintiffs have already been financially compelled to permanently close as a direct and proximate result of Defendants' unlawful and unconstitutional takings without just compensation.

191) Plaintiffs were not provided a trial by jury to determine this amount as required by Cal. Const. Art. 1, § 19.

192) Plaintiffs were not provided any other means by the State of California or Sonoma County to determine the value lost due to the regulatory taking of Plaintiff's property for the duration of the Defendants' orders.

193) Plaintiffs have been provided no compensation for the deprivation of property.

194) Plaintiff has a right under the California Constitution to not only "just compensation" for property taken, but also to a right to trial by jury prior to the taking. While there may be some exigency to justify not engaging in a trial by jury for the value of the use and enjoyment of the property prior to this regulatory taking, there is no such excuse for the failure to allow any immediate process for determination of just compensation nor any excuse for the failure to make a payment of any sum in the interim for the taking which occurred. Furthermore, with the closure of most of the California Courts system for purposes other than an extremely limited list of acceptable filings, Plaintiff has not even been permitted to use the California Courts to seek a redress of this grievance.

195) Plaintiffs pray for relief in the form of injunctive relief pursuant to Cal. Civ. Code § 52.1(c) that declares the stay-at-home orders are lawfully expired, and regardless of whether or not the orders are expired, the orders are unconstitutional and unenforceable and that Plaintiffs may lawfully reopen for business so Plaintiffs may continue their life's mission. Plaintiffs further request that the Court issue the required warning encoded in Cal. Civ. Code § 52.1(e). Plaintiffs further pray for actual damages and attorney fees pursuant to Cal. Civ. Code § 52.1(i) and Cal. Code Civ. Pro § 1021.5.

**PRAYER FOR RELIEF**

1) Plaintiffs seek a determination that the shutdown orders issued by Defendant Governor Newsom is unconstitutional and/or unenforceable against Plaintiffs.

2) Plaintiffs seek a determination that the shutdown orders issued by Defendant California Public Health Officer Sonia Y. Angell is unconstitutional and/or unenforceable against Plaintiffs.

3) Plaintiffs seek a determination that the shutdown orders issued by Defendant Sonoma County is unconstitutional and/or unenforceable against Plaintiffs.

4) Plaintiffs seek a determination that the shutdown orders issued by Defendant Sonoma County Health Officer Sundari Mase is unconstitutional and/or unenforceable against Plaintiffs.

5) Plaintiffs seek special damages for lost revenue plus future lost revenue caused by the shutdown of Plaintiffs' two stores which are now permanently lost.

6) Plaintiffs seek general damages in an amount to be determined at trial.

7) Plaintiffs seek attorney fees and costs in this action.

8) Plaintiffs seek any other orders for relief as may be deemed just by this Court.

9) Plaintiff Demands Trial by Jury.

Dated: May 12, 2020

BECKER LAW PRACTICE

/s/ Matthew N. Becker_____
Matthew Becker
Attorney for Plaintiff

PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
Dana and Michael Bryand d/b/a Crossing the Jordan v. Newsom et al --- Case No. 3:20-cv-3243