BRUCE D. GOLDSTEIN (SBN 135970)
County Counsel
MICHAEL A. KING (SBN 77014)
Deputy County Counsel
County of Sonoma
575 Administration Drive, Room 105-A
Santa Rosa, CA  95403
Telephone:  (707) 565-2421
Email:    michael.king@sonoma-county.org


Attorneys for Defendants, DR. SUNDARI MASE, in her official capacity as the
Sonoma County Public Health Officer; MARK ESSICK, in his official capacity as Sheriff
of Sonoma County, SUSAN GORIN, in her official capacity as a Sonoma County
Supervisor; DAVID RABBITT, in his official capacity as a Sonoma County Supervisor;
SHIRLEE ZANE, in her official capacity as a Sonoma County Supervisor; JAMES GORE
in his official capacity as a Sonoma County Supervisor; and LYNDA HOPKINS, in her
official capacity as a Sonoma County Supervisor

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANA BRYANT and MICHAEL BRYANT, d/b/a CROSSING THE JORDAN,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California, *et al.*,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:20-cv-3243<br><br>Honorable Vince Chhabria<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[F.R.C.P. Rules 12(b)(1)&(6)]**<br><br>[*Proposed Order and Request for Judicial Notice Filed Herewith*]<br><br>Complaint Filed: May 13, 2020 |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

　　　PLEASE TAKE NOTICE THAT on July 30, 2020, at 10:00 a.m., or as soon

thereafter as the matter may be heard in Courtroom 4 of the above-entitled Court located

at 450 Golden Gate Avenue, San Francisco, California, Defendants DR. SUNDARI MASE, in her official capacity as the Sonoma County Public Health Officer; MARK ESSICK, in his official capacity as Sheriff of Sonoma County, SUSAN GORIN, in her official capacity as a Sonoma County Supervisor; DAVID RABBITT, in his official capacity as a Sonoma County Supervisor; SHIRLEE ZANE, in her official capacity as a Sonoma County Supervisor; JAMES GORE in his official capacity as a Sonoma County Supervisor; and LYNDA HOPKINS, in her official capacity as a Sonoma County Supervisor (hereinafter  collectively "County Defendants") will and hereby move this Court pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for a dismissal of the Complaint as it fails to state a claim upon which relief may be granted.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings and appears on file in this action and upon such other matters as the Court may allow to be presented at the time of hearing on this matter.

This Motion to Dismiss is based on the attached Memorandum of Points and Authorities in support thereof, the accompanying Request for Judicial Notice, the papers and pleadings on file herein, and on such further arguments or evidence as may be presented prior to adjudication of the motion.


Dated: June 23, 2020                              BRUCE D. GOLDSTEIN, County Counsel


                                                  By:  /s/ *Michael A. King*
                                                       Michael A. King
                                                       Deputy County Counsel
                                                       Attorneys for County Defendants

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................7

**I.   PROCEDURAL BACKGROUND** .......................................................................7

**II.   FACTUAL BACKGROUND** .............................................................................8

**III.   LEGAL STANDARD FOR MOTION** ............................................................12

**IV.   ARGUMENT** .................................................................................................13

   **Plaintiffs Fail to Allege Facts to Support a Claim Against County Defendants.** 13

   **The Sonoma Health Orders Are a Valid and Constitutional Exercise of Emergency Powers.** .............................................................................................15

   **The Sonoma Orders Pass Traditional Constitutional Scrutiny.** ...........................19

   **Plaintiffs Are Not Members of a Protected Class Under the 14th Amendment**………...20

   **Plaintiffs State Law Claims Also Fail to Allege Facts to Support a Legal Theory**……21

**V.   CONCLUSION** .............................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Aids Healthcare Foundation v. Los Angeles County Department of Health*  197 Cal.App.

8th 693 (2011) ...............................................................................23

*Angelotti Chiropractic, Inc. v. Baker, 791 F.3d 1075, 1085 (9th Cir. 2015)*
...................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
.............................................................. 13

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)...................................... 14, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
............................................................. 13

*Benson v. Walker*, 274 F. 622 (4th Cir. 1921)
................................................................. 16

*Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336 (9th Cir. 1996)
........................................ 13

*City of Cleburne,* 473 U.S. 432 (1985)...........................................................................21

*Compagnie Francaise de Navigation a Vapeur v. Bd. Of Health of State of La.,* 186 U.S.

380 (1902) .................................................................................... 16

*Does 1–5 v. Chandler,* 83 F.3d 1150 (9th Cir.1996)........................................................21

*Duarte Nursery Inc. v. California Grape Rootstock Improvement Com.,* 239 Cal.App.4th

1000 (2015) ......................................................................................23

*FCC v. Beach Communications, 508 U.S. 307, 113 S. Ct. 209 (1993*
............................ 19

*Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528 (1985) ............... 17

*Hickox v. Christie*, 205 F.Supp.3d 579 (D.N.J. 2016)
..................................................... 16

*In re Abbott*, 954 F.3d 772 (5th Cir. Apr. 7, 2020)
......................................................... 17

*In re Gilead Scis. Litig.* (9th Cir. 2008) 536 F.3d 1049 .................................................... 14

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905)
.............................................................. 15

*Marshall* v. *United States*, 414 U. S. 417 (1974) ............................................................. 17

*Mendez v. County of Alameda*, 2005 U.S. Dist. LEXIS 31921 (N.D. Cal. 2005)............. 21

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ................................................... 13

*People v. Braum*, 2020 Cal. App. LEXIS 446 (2020) ...................................................... 24

*Phillips v. City of New York*, 775 F.3d 538 (2d Cir.), *cert. denied*, 136 S.Ct. 104 (2015) ................................................... 16

*Prince v. Massachusetts*, 321 U.S. 158 (1944) ................................................... 16

*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d. 530 (9th Cir. 1984) ......................... 13

*South Bay United Pentecostal Church v. Newsom, et al.* 590 U.S.    (2020) .............. 8, 16

*Tolosko-Parker v. County of Sonoma*, 2009 U.S. Dist. LEXIS 15598 (N.D. Cal. 2009) . 22

*United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971) ................................................... 17

*United States v. Chalk, Id.* (citing *Moyer v Peabody*, 212 U.S. 78 (1909) ....................... 17

*Whitlow v. California*, 203 F. Supp. 3d 1079 (S.D. Cal. 2016) ........................................ 16

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) ........................... 8

## Statutes

17 Calif. Code of Regs. § 2501(a) ...................................................................... 20

42 U.S.C. § 1983 .......................................................................... 7, 12, 18

Cal. Civ. Code § 52.1 ................................................................... 7, 19, 20

Cal. Government Code  § 8558 ............................................................ 14

Cal. Government Code § 820.2 ............................................................ 20

Cal. Government Code § 855 ............................................................ 20

Cal. Government Code § 8610 ............................................................ 11

Cal. Government Code § 8630 ............................................................ 11

Cal. Government Code § 8634 ............................................................ 11

Cal. Government Code § 8655 ........................................................ 11, 20

Cal. Health & Safety Code § 101040 ............................................... 11, 13, 14

Cal. Health & Safety Code § 101080 ................................................... 20

Cal. Health & Safety Code §101040(b) ................................................. 21

Cal. Health and Safety Code § 101085 ............................................................... 11, 13

Cal. Health and Safety Code § 120175 ........................................................... 11, 13, 14
Cal. Health and Safety Code § 120175.5
............................................................................. 14
Cal. Health and Safety Code § 120215
............................................................................. 14

California Government Code § 8634 ............................................................... 20
Fed. Rules Civ. Proc., Rule 12(b)(6)
............................................................................. 11

Title 17 Cal. Code of Regulations § 2501 ...................................................... 11

**Other Authorities**

https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce
.. 16

**Constitutional Provisions**

Cal. Constitution, article I, section 1 ............................................................... 7

Cal. Constitution, article I, section 13 ............................................................. 7

Cal. Constitution, article I, section 19 ............................................................. 7

Cal. Constitution, article I, section 7 ............................................................... 7

Equal Protection Clause of the Fourteenth Amendment .................................... 18

United States Constitution, Eighth Amendment ................................................. 7

United States Constitution, Fifth Amendment .................................................... 7

United States Constitution, First Amendment .................................................... 7

United States Constitution, Fourteenth Amendment ........................................... 7

United States Constitution, Fourth Amendment ................................................. 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.        PROCEDURAL BACKGROUND

On May 13, 2020, Plaintiffs MICHAEL BRYANT and DANA BRYANT filed their lawsuit against Governor Gavin Newsom, Attorney General Xavier Becerra, elected officials and named employees of the County of Sonoma and the City of Santa Rosa, alleging various violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 1, 7, 13 and 19 of the California Constitution. Plaintiffs brought this action pursuant to 42 U.S.C. §1983 and California Civil Code §52.1. [Doc. 1-main, ¶¶ 74-190.]

On May 18, 2020, Plaintiffs filed an Application for Temporary Restraining Order ("TRO Application"), seeking a broad Order of the Court that Defendants shall be restrained and enjoined "from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with any prohibition on:

a.        Plaintiffs Dana and Michael Bryant d/b/a Crossing the Jordan being able to operate their thrift stores including, permitting customers to enter and browse their stores so long as reasonable public health safety requirements are followed including:

i.        social distancing requirements for customers in the store;

ii.        limiting the number of persons in the stores;

iii.        requirements of all employees and customers on premises wearing masks;

iv.        frequent disinfecting of frequently touched items such as the ATM keypad used  for paying for purchases

b. Any other similarly situated store owners willing to undertake similar sanitation and hygiene and public health safety measures."

(Doc. 9, p. 1, lines 24 - p.2, line 8.)

On May 19, 2020, the Court summarily denied the TRO Application and issued a one-page Order denying Plaintiffs' TRO Application.  The Honorable Vince Chhabria, after thorough review of the Application found:

"The plaintiffs have not shown that they are likely to succeed on the merits of their lawsuit, that the balance of equities tips in their favor, or that an injunction is in the public interest. See *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008)."

On May 29, 2020, the United States Supreme Court issued its decision in *South Bay United Pentecostal Church v. Newsom, et al.* 590 U.S. ___ (2020), in which it denied injunctive relief for restrictions on gathering for religious services, arising out of this very same "extraordinary health emergency."

On June 5, 2020, the Sonoma County Health Officer authorized retail stores to re-open as long as they followed certain procedures and protocols.  (County Defendants' Request for Judicial Notice ("RJN") No. 13, Order C19-14)

On June 18, 2020, Plaintiffs dismissed all the State Defendants. (Doc #17)

## II.      FACTUAL BACKGROUND

To date, the worldwide pandemic of COVID-19 disease, also known as "novel coronavirus," has infected over 9 million individuals worldwide in over 180 countries and is implicated in nearly 471,640 worldwide deaths, including about 885 cases and 5 deaths in Sonoma County.[1]   In California, to date there are approximately 178,054 cases, and 5,515 fatalities. (County Defendants' RJN, No. 16)

In response to this healthcare crisis, the State of California, along with each of the counties in California, and the elected officials and employees therein, have been working non-stop to determine how to best meet the needs of all residents without fanning the flames to spark another outbreak.

Plaintiffs' Complaint seeks to challenge the original March 17, 2020, order by Sonoma County Public Health Official (sic), claiming that Defendant Sundari Mase:

---

[1] https://coronavirus.jhu.edu/map.html; Johns' Hopkins University & Medicine, Coronavirus Resource Center, 6/22/20; https://socoemergency.org/emergency/novel-coronavirus/?src=homeSA1 ; So Co Emergency, "Sonoma County Coronavirus Cases at a Glance", 6/21/20.

"issued an order that arbitrarily determined certain businesses to be "essential" and that all other businesses not favored by Defendant Dr. Sundari Mase be ordered closed. No provision was made for compensation to such businesses for the regulatory taking of all value from the property." (Doc. 1, ¶ 17. p. 5-6) The Complaint also challenges a later order issued on May 7, Order 19-09, which defines "essential businesses" to include "Businesses providing food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals." (Doc. 1, ¶ 19)

This later order on May 7, allowed Plaintiffs and other retail store owners, to open for delivery and curbside pickup. (County Request for Judicial Notice ("RJN") No. 10, Amendment No. 1 Order C19-09, p. 3, ¶10)

The Complaint also appears to challenge the Executive Orders of California Governor Gavin Newsom that relate to the same issues such as what businesses are "essential." (Doc. 1, ¶¶ 20-22. p. 6).  Yet Governor Newsom and the State Defendants' orders and actions are no longer in dispute since they are no longer parties.

The Complaint provides some description of the background leading to the implementation of the Executive Orders of the Governor and the local health officer, Sundari Mase, M.D.  Mention is made of SARS CoV-2 virus, also termed COVID-19, and some cursory discussion of the spread to the United States from China. (Doc. 1, ¶¶ 13-14, p. 5).   There also uncertain and vague references to partial segments of statements by Dr. Anthony Fauci, news media reports, significant deaths in Washington State, and recent studies in Germany and from Stanford University. (Doc 1, ¶¶ 44-57, pp. 10-11).

In a somewhat confusing faction, the Complaint intersperses facts, references to Defendants' "shutdown orders", and argument. (Doc 1, ¶¶ 59-73).

In response to the rapidly evolving world and nationwide COVID-19 pandemic, on March 4, 2020, a Proclamation of a State of Emergency was issued by California Governor Gavin Newsom. (Doc. 1, ¶16, p. 5).  On March 2, 2020, the Sonoma County Health Officer issued a Declaration of a Local Health Emergency declaring that COVID-19 in Sonoma

County is a threat to the public health within the meaning of Health and Safety Code Section 101080. (County Defendants' RJN Exhibit No. 2) [2]

Because of the known propensity of the COVID-19 virus to spread person-to-person, and that spread is magnified when people are within close physical distance; and due to the escalating person-to-person spread of COVID-19 throughout the county, state, and nation, following the lead of other Bay Area counties, on March 17, 2020, the Sonoma County Health Officer issued a "Shelter in Place" Order, No. C19-03. This order directed all individuals living in the County to shelter at their place of residence, except that they may leave to provide or receive essential services, or engage in essential activities and work for essential businesses and governmental services, as defined in the Order. (Doc 1, ¶17, p. 5; County Defendants' RJN Ex.4).

The Governor and State Public Health Officer continued to issue orders and guidance to the public and to local jurisdictions. (County Defendants' RJN Exs. 5, 6, 7)

On March 31, 2020 the County Health Officer issued an Order, No. C19-05, which superseded the March 17, 2020 Order C19-03. (County Defendants' RJN Ex. 8). On May 1, 2020, Dr. Mase issued Order No. C19-09, which has been amended a few times to commence the "re-opening" process due to the regular change in data and metrics. (County Defendants' RJN Exs. 9, 10) Order C19-09 also clarified and amended the previous Order regarding the definitions and exemptions of essential activities and essential businesses, as set forth under Section 13 of the Order.

On June 5, 2020, the County Health Officer issued Order No. C19-14. County Defendants' RJN, Ex. No. 13), which loosens the restrictions even further. By its terms in paragraph 7, p.2, Order No. C19-14 supersedes the prior orders. As with its predecessors, the Order is based upon scientific evidence and data, key indicators for Covid-19, consultation with other Bay Area Health Officers, as well as other factors. (RJN Ex. 13, ¶¶1,4, 9, and 11 for example). It allows indoor retail operations with the same type of

---

[2] All identified Proclamations, Resolutions, and Orders in this Application are attached to the County's Request for Judicial Notice in Support of Motion to Dismiss, filed herein.

restrictions that Plaintiffs agree are acceptable to them. (County RJN, Ex. No.   p.10, ¶17(b)xxi).   *The issue of injunctive relief is moot.*

Plaintiffs apparently do not contest that implementation of the State health orders or the local health orders as allowed under State law is a legal and proper attempt to control the spread of COVID-19. The actions taken by the County Health Officer have addressed and affected a wide-variety of industries and events, all with the common goal of reducing the spread of COVID-19 and minimizing the strain upon the healthcare system. These orders tracked numerous other neighboring counties' orders and followed generally accepted guidelines and directives of the State Department of Public Health. The alleged violations of constitutional rights, are broadly stated in mostly conclusory and argumentative terms.  See the "Causes of Action", Doc. 1, ¶¶74-195.

As stated in the March 17 (C19-03) and March 31 (C19-05) Orders (County RJN Exs. 4, 8) the County specified on page 1, paragraph 1, that the intent of the Order was to:

> …ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the maximum extent possible.  When people need to leave their places of residence, whether to obtain or perform vital services, or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times reasonably possible comply with Social Distancing Requirements as defined in Section 10 below.  All provisions of this Order should be interpreted to effectuate this intent.  Failure to comply with any of the provisions of this Order constitutes an imminent threat to public health.

> The initial Order C19-03 also set out the basis for their issuance on page 2,

> paragraph 6:
> … evidence of increasing occurrence of COVID-19 within the County and throughout the Bay Area, scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, and evidence that the age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19.  Due to the outbreak of the COVID-19 virus in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the

County.  Making the problem worse, some individuals who contract the COVID-19 virus have no symptoms or have mild symptoms, which means they may not be aware they carry the virus.  Because even people without symptoms can transmit the disease, and because evidence shows the disease is easily spread, gatherings can result in preventable transmission of the virus.  The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed.

In other words, no matter whether Plaintiffs choose to inaccurately quote medical professionals or scientific studies in their Complaint, a completely rational and reasonable basis existed for the State and local health orders; and still does.

The Sonoma County Orders ("County Orders") were expressly made pursuant to California *Health and Safety Code* sections 101040, 101085, and 120175.  They are further authorized by California Health and Safety Code 101030; Title 17 California Code of Regulations section 2501; California Government Code sections 8610, 8630, 8634 and 8655.

Notably, the County Orders are orders of *general applicability*; they apply to <u>all</u> residents and visitors in the County of Sonoma. These initial orders were specifically based upon the March 19, 2020 Orders of the Governor and the guidelines of the Director of the California Department of Public Health; since the County does not have any legal authority to issue orders less restrictive than the State Orders. Neither Plaintiffs' drug rehabilitation program, thrift shops, nor their other business ventures are singled out or otherwise treated adversely in any specific fashion under the County Orders.

### III.   LEGAL STANDARD FOR MOTION

A party can bring a motion to dismiss when the complaint fails to "state a claim upon which relief can be granted." Fed. Rules Civ. Proc., Rule 12(b)(6). A complaint will be dismissed as a matter of law for either of two reasons "(1) lack of a cognizable legal

theory or (2) insufficient facts under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d. 530, 534 (9th Cir. 1984).

In determining whether a case fails to state a claim, "[a]ll allegations and material facts are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

It is clear from even a cursory review of the Complaint in this matter (Doc 1-main), that there are few facts alleged that actually detail any "plausible claim for relief against any of the County defendants." In addition, each of Plaintiffs' claims fails as a matter of law since the Sonoma County Orders are a valid exercise of emergency powers that are subject only to minimal scrutiny.  Given the large number of allegations and causes of actions pled by the Plaintiffs, the County focuses on the legitimate exercise of public power in the face of this horrible world-wide health emergency.

## IV.   ARGUMENT

### Plaintiffs Fail to Allege Facts to Support a Claim Against County Defendants.

A major defect of the Complaint is the utter failure to allege any conduct by the individual County Defendants that caused any damage to either Plaintiff, or that is even capable of being enjoined.  The only objectionable conduct of any County Defendant apparently is the issuance of the valid emergency public health orders by Sundari Mase, M.D. (Doc 1, ¶¶17-18, pp. 5-6; 28-30, pp. 28-30).

There no facts alleged that establish how any of the County Defendants deprived Plaintiff of a federal right under 42 U.S.C. §1983. See *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). ("A plaintiff must allege facts, not simply conclusions that show that an individual was personally involved in the deprivation of his [or her] civil rights.").

Plaintiffs offer generalized allegations that the County Defendants are each in some fashion related to the County, but does not allege facts involving any specific defendant that give rise to a claim. The Court is not required to accept as true, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Litig.* (9th Cir. 2008) 536 F.3d 1049, 1055.

No action by any member of the Board of Supervisors, in his or her official capacity, is alleged to have caused any harm or deprivation to the Bryants. In fact, the individually named members of the Board of Supervisors are alleged to be members of the *San Mateo County Board of Supervisors.* (Doc 1, ¶ 39, p. 9). While perhaps they are generically included in some of the later conclusory allegations of "Defendants" denying some rights of the Bryant's under either Federal or State Constitutions, no conduct is alleged specific to any member of the Board of Supervisors for either San Mateo County or Sonoma County. They are forgotten, perhaps for good reason.

Nowhere is there mention of any conduct by Mark Essick who is correctly identified to be the Sheriff of Sonoma County, and who Plaintiffs allege is mandated by statute to enforce the orders of Dr. Mase. (Doc 1, ¶¶27 and 37). He is also forgotten after that, probably since he had no involvement with the Plaintiffs.

The only County Defendant who is alleged to possibly have done anything adverse to the interests of Plaintiffs is Sundari Mase, M.D. Dr. Mase is authorized by multiple statutes to issue her emergency orders. Plaintiffs have not attacked any one of these statutes as unconstitutional. The various orders all expressly mention that they are issued under the authority of California Health & Safety Code Sections 101040, 101085, and 120175. (County Defendants' RJN Notice, Exhibit Nos. 4, 8, 9, 10, 13) . It is clear that her issuance of her orders in a time of crisis were a valid exercise of emergency powers.

## The Sonoma Health Orders Are a Valid and Constitutional Exercise of Emergency Powers.

There are times when the needs of the community outweigh the personal desires of the individual; this is one of those times. Not just the City of Santa Rosa, Sonoma County, the State of California, the United States, but the entire planet, is faced with the ravages of an unseen foe against whom the traditional tools of pharmacology and medicine have little effect.  New tools have been forged to limit the losses, but these tools require far greater sacrifice by individuals for the greater good, than a minority of our cohabitants are willing to make. Instead, these few individuals wrap themselves in a blanket made of constitutional rights that is meant for use in a different climate, not the cold, haunting conditions we have all lived in for these past months.  Fortunately for all, the weather is improving and progress is continually being made to lift restrictions on a slow and steady basis.

A local Public Health Officer may take any preventative measure that may be necessary to protect and preserve the public from any public health hazard during any "state of war emergency, "state of emergency" or "local emergency", as defined by Section 8558 of the Government Code.  "Preventative Measure" means abatement, correction, removal or any other protective step that may be taken against any public health hazard that is caused by a disaster and affects the public health. See, *Health and Safety Code* § 101040. Additionally, each health officer is required to take measures as necessary to prevent and control the spread of an infectious or contagious disease within his or her jurisdiction. See, *Health and Safety Code* §§120175, 120175.5, and 120215.

The United States Supreme Court has long recognized that a "community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905)(internal quotations omitted.)  From upholding an eighty-hour quarantine of a nurse who was treating Ebola patients, to upholding mandatory vaccination programs, the Court has allowed state and local government to enact laws that quarantine individuals and protect society from disease.

*See, e.g.*, *Compagnie Francaise de Navigation a Vapeur v. Bd. Of Health of State of La.,* 186 U.S. 380, (1902)(upholding quarantine law against constitutional challenges); *Benson v. Walker*, 274 F. 622 (4th Cir. 1921)(upholding board of health resolution that prevented carnivals and circuses from entering a certain county in responses to the 1918-1919 influenza epdimic; *Hickox v. Christie*, 205 F.Supp.3d 579 (D.N.J. 2016)(upholding the eighty-hour quarantine of a nurse returning from treating Ebola patients in Sierra Leone); *Phillips v. City of New York*, 775 F.3d 538 (2d Cir.) (finding that a challenge to mandatory vaccination law was "foreclosed" by *Jacobson*), *cert. denied*, 136 S.Ct. 104 (2015); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1083 (S.D. Cal. 2016) (finding no likelihood of success on a free exercise challenge to a law removing a religious- or conscious-based exemption for mandatory vaccination of schoolchildren).

The Supreme Court has also recognized that "under the pressure of great dangers," constitutional rights may be reasonably restricted" as the safety of the general public may demand. *Jacobson*, 197 U.S. at 29. Indeed, the "right to practice religion freely does not include liberty to expose the community…to communicable disease." *Prince v. Massachusetts*, 321 U.S. 158 (1944).

Most recently, in direct response to this tragic and pervasive threat, the United States Supreme Court refused to overturn the decision of the 9th Circuit and the U.S. District Court for Southern District of California, not to enjoin the valid Orders of Governor Newsom and the San Diego Health Officer. These are the same orders of Governor Newsom that the Bryants challenge in this lawsuit, along with local county orders that allegedly placed restrictions on the constitutional right to assemble [for religious ceremony] arising from this very same pandemic. *South Bay United Pentecostal Church v. Gavin Newsom* 590 U.S. ___(2020), decided May 29, 2020. Chief Justice Roberts expressly found:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson* v. *Massachusetts*, 197 U. S. 11, 38 (1905). When those officials "undertake[

] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall* v. *United States*, 414 U. S. 417, 427 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not ac-countable to the people. See *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545 (1985).

The invocation of emergency powers necessarily "restrict activities that would normally be constitutionally protected. Actions which citizens are normally free to engage in become subject to criminal penalty." *United States v. Chalk*, 441 F.2d 1277, 1281 (4th Cir. 1971).

The State, along with each of its counties, must be able to take immediate and decisive action to prevent the spread of an infectious or communicable disease. This court's review of temporary measures taken during this emergency period is "limited to a determination of whether the actions were taken in good faith and whether there is some factual basis for the decision that the restrictions imposed were necessary to maintain order." *United States v. Chalk*, *Id.* (citing *Moyer v Peabody*, 212 U.S. 78 (1909); *see also Jacobson,* 197 U.S. at 29 ("reasonable regulations" may be implemented in the face of an infectious disease epidemic).

Thus, the appropriate standard to review a challenge to a valid public health order is whether power had been exercised in an "arbitrary, unreasonable manner" or "through 'arbitrary or oppressive' regulations." *In re Abbott*, 954 F.3d 772, 784 (5th Cir. Apr. 7, 2020) (applying a deferential, rational-basis standard to an executive order restricting otherwise constitutionally protected abortion access in the COVID-19 pandemic).  During a state of emergency, governmental entities may impose more onerous restrictions upon its citizens, as long as such restrictions are "reasonably necessary for the preservation of order."  *United States v. Chalk*, 441 F.2d 1277, 1281.

The Sonoma County Health Orders were issued by the Health Officer as a result of the worldwide pandemic of COVID-19 disease, which at the time of issuing of the first

Sonoma County Health Orders, had infected over one million individuals worldwide in over 180 countries and was implicated in over 50,000 worldwide deaths, including thousands of cases and hundreds of deaths in the Bay Area. The County Orders are intended to stem the spread of the virus and to slow the growth rate of the infected and hospitalized members of the public. The singular purpose: to "flatten the curve" to avoid the collapse of our hospitals, medical professionals and healthcare institutions throughout California.

The County Orders are reasonably necessary to prevent the spread of the coronavirus to the general public, while allowing federally identified critical infrastructure sectors to operate as set forth by the Department of Homeland Security at https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce. The California Public Health Department issued similar guidelines as to who was an "essential worker", first on March 22, 2020.  (County Defendants' RJN, Exhibit No. 7). Indeed, the County Orders do not identify any specific industry, retailers, faith, or business as essential, instead incorporating the general infrastructure designations of the federal and state governments.

Moreover, Plaintiffs remained free to operate their drug rehabilitation program in whatever manner they saw fit with a number of options available to them.  Even before the filing of this lawsuit, Plaintiffs were also free to operate their retail stores with limitations to curbside pickup, delivery, and outdoor display. (Amendment No. 1 to Order C19-09 effective May 8; County Defendants' RJN Ex. No. 10) At the time of this Motion, they are free to have indoor store operations with safety guidelines and protections, which they agree are necessary.  (Doc.#1; para  73 pp 13-14)  The Sonoma County Health Officer has allowed indoor retail operations with safeguards, to resume effective June 5, 2020. (County RJN, Ex. No 13).

As such, the Sonoma Orders are a valid and constitutional exercise of the local health officer's emergency powers to protect against the spread of a disease and not an unwarranted invasion of Plaintiffs' constitutional rights.

## **The Sonoma Orders Pass Traditional Constitutional Scrutiny.**

Even if the Court does not apply a reasonable and deferential standard, the Sonoma Orders do not violate traditional constitutional analysis. As such, Plaintiffs' Complaint fails to state a cause of action. Plaintiffs argue that the Sonoma County Orders have been discriminatory in favor of businesses with an arbitrary classification of "essential". (Doc 1 ¶163, p. 29). They allege that "furthermore arbitrarily chose certain businesses, of which Plaintiffs' business is one, that were mandated to be closed, while permitting others who were favored as so-called "essential" businesses to remain open." (Doc 1, ¶29, p.8). Plaintiffs further argue that the County Orders are discriminatory against them in some fashion by refusing to grant them an exemption to the general rule that thrift stores and retail clothing stores are "non-essential". (Doc 1, p. 12, lines 17-21).

Plaintiffs' arguments, however, fail because the County Orders are valid and neutral laws of general applicability that do not target Plaintiffs in any different fashion than any other similarly placed clothing or thrift store, whether for profit, or not for profit. The Orders actually "shutdown" all businesses, but allowed "essential" workers to keep working based upon published federal and state guidelines.

The State and County orders do not impinge upon Plaintiffs fundamental rights. Nor do they discriminate on the basis of any suspect classification. Even if traditional constitutional analysis is the standard, the *orders* need only survive rational basis review. *FCC v. Beach Communications, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)*. When a law regulates different classifications of conduct differently, rational basis review requires that there be "a plausible policy reason for the classification" and that "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Angelotti Chiropractic, Inc. v. Baker, 791 F.3d 1075, 1085 (9th Cir. 2015) (quoting Nordlinger v. Hahn, 505 U.S. 1, 11, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992))*.

Here, Plaintiffs do not allege that the County issued its emergency public health orders out of any desire or intent to target Plaintiffs' thrift stores (or even retail stores in general) because of the nature of the drug rehabilitation program or the thrift stores. The County's stay-at-home orders applied generally countywide.  These orders required the temporary closure of a wide-range of businesses, events, and areas where people gather, without respect to the nature of any such establishment or gathering.  The County Orders initially included, but were not limited to, retail clothing stores, shopping malls, schools, hotels, wineries, casinos and restaurants.  These Orders directly impacted hundreds of thousands of County residents, and probably thousands of businesses.  Plaintiffs have not articulated why their retail stores that supposedly allow them to house 100 people, are different from restaurants, wineries, department stores, or a wide range of other businesses that support thousands of actual workers.

### **Plaintiffs Are Not Members of a Protected Class Under the 14th Amendment.**

Plaintiffs allege that intend to have a "sanitized environment" that will be different than the "frequently unsanitary environments of Walmart, Costco, and Home Depot." (Doc. 1, p. 20, lines 19-21).  Despite admittedly violating the Health Orders for weeks, thus receiving citations for fines, there are conflicting allegations whether they have provided a "sanitized environment."  They argue that Defendants' orders have been discriminatory in favor of certain businesses of the arbitrary classification as "essential". (Doc. 1, p. 29, lines 16-19.) The claim that they have been treated differently in violation of the Equal Protection Clause of the Fourteenth Amendment (Doc. 1, p.20, lines 19-21.)

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership *in a protected class*." (*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Plaintiffs will not prevail on this cause of action as "essential" versus "non-essential" membership *is not* a protected class. More importantly, Plaintiffs have not

alleged, and cannot actually allege, membership in a protected class as the Sonoma Orders do not apply different to members of a protected class such as race or gender.

As Plaintiffs are not members of a protected class, a governmental policy that treats individuals differently needs only to be "rationally related to legitimate legislative goals" to pass constitutional muster. (*Does 1–5 v. Chandler,* 83 F.3d 1150, 1155 (9th Cir.1996) (citing *City of Cleburne,* 473 U.S. 432 (1985).) As explained above, the Sonoma County Orders are reasonable and in the legitimate public interest to protect against the spread of a highly contagious and infectious disease. Since Plaintiffs have failed to clearly identify membership in a protected class, this claim should be dismissed without leave to amend.

### Plaintiffs' State Law Claims Also Fail to Allege Facts to Support a Legal Theory.

Plaintiffs have alleged multiple causes of action for supposed violations under California law, again without alleging any facts specifically involving the County defendants.  The only alleged discriminatory conduct appears to be that Plaintiffs' thrift stores were not deemed to be "essential," while a toy store claimed that it was an "essential" business.  The Health Orders do not make that distinction, nor is there any specific allegation that Dr. Sundari Mase, Sheriff Mark Essick, or any member of the Board of Supervisors had any involvement in agreeing that the toy store was "essential", or that the thrift stores were not essential.

These claims must be dismissed because the Bryant's have not asserted any valid constitutional claim under California Civil Code § 52.1 that is distinct from the claims under 42 U.S.C. §1983§.  *Mendez v. County of Alameda*, 2005 U.S. Dist. LEXIS 31921 (N.D. Cal. 2005).  Causes of action 9-14 are essentially repeating causes of action #1 through 8. (Doc 1, ¶157, p.28).

California Civil Code §52.1, that is repeated for each cause of action pertaining to an alleged violation of some section of the California Constitution, specifically provides for injunctive relief.  The issue of an injunction is moot since the thrift stores may now

operate within the safety guidelines of all retail operations, just as Plaintiffs say that they will operate.  (County Defendants' RJN, Exhibit No. 13).

The necessary elements for a Civil Code section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her property; (3) plaintiff was harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm." *Tolosko-Parker v. County of Sonoma*, 2009 U.S. Dist. LEXIS 15598 (N.D. Cal. 2009) citing *Bay Area Rapid Transit v. Superior Court* 38 Cal. App. 4th 141, 144 (1995).   "Threat of imprisonment" and "threat of ruinous fines" do not amount to threats of violence.

There are no facts alleged that come close to stating a cause of action under the Bane Act.

The Covid-19 virus has created both a health emergency as defined by Health & Safety Code section 101080 and a local emergency as defined by Government Code section 8558 for the State of California, including the County of Sonoma.  As such, based upon these statutes, Dr. Mase, as the County of Sonoma's Public Health Officer, may promulgate orders as necessary to protect life and property pursuant to California Government Code section 8634.  Dr. Mase, in fact, has immunity for any claim based upon her exercise or performance of a discretionary function. Govt. Code §§8655, 820.2, 855.4 (to control the spread of a communicable disease).

"Each health officer knowing or having reason to believe that any case of the diseases made reportable by regulation of the department, or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases." *Calif. Health & Safety Code* §120175. See also 17 *Calif. Code of Regs*. section 2501(a) which states in relevant part: "Upon receiving a report made pursuant to Section 2500 or 2505, the local health officer shall take whatever steps deemed necessary for the investigation and control of the disease, condition

or outbreak reported."   Thus, Dr. Mase, as the local Health Officer, may take any measures as may be necessary to prevent the spread of disease or the occurrence of additional cases.

Notably, *Health and Safety Code* section 120175, specifically states it is the duty of the Health Officer to investigate all cases, to ascertain the sources of infection, and to take "all measures reasonably necessary to prevent the transmission of infection."   *Aids Healthcare Foundation v. Los Angeles County Department of Health* (2011) 197 Cal.App. 8th 693, 701.   "The health officer must take "measures as may be necessary," or "reasonably necessary," to achieve the Department's goals and policies, leaving the course of action to the health officer's discretion. The statutory scheme sets forth certain actions, ranging from quarantine and isolation for contagious and communicable diseases …." (citations omitted).   *Id.*, 197 Cal.App.4th at 702.

These statutory measures, however, are not exhaustive or mandatory, giving the health officer discretion to act in a particular manner depending upon the circumstances." *Id*. at 702. "Preventative measure" means abatement, correction, removal of any other protective step that may be taken against any public health hazard that is caused by a disaster and affects the public health.   *Health & Safety Code section* 101040(b). Thus, the allegations relating to supposed violations of rights under California constitution, are inapposite.   The public health officer has taken authorized reasonable actions to prevent the spread of a highly infectious disease.

The State's "police power extends to legislative objectives in furtherance of public peace, safety, morals, health and welfare. … [¶] … [¶] … A law is a valid exercise of the police power unless the law is manifestly unreasonable, arbitrary or capricious, and has no real or substantial relation to the public health, safety, morals or general welfare." *Duarte Nursery Inc. v. California Grape Rootstock Improvement Com.,* 239 Cal.App.4th 1000, 1008-1009 (2015); citing *Massingill v. Department of Food & Agriculture*, 102 Cal. App. 4th 498 (2002)

In the present matter, Plaintiff Michael Bryant freely admits to having received multiple notices before receiving a single citation.  (Doc 1, ¶¶4-5, 24).  Plaintiffs had every

opportunity to avoid the citation by simply honoring the same limitations applicable to any other retail or thrift store. He made a conscious choice to continue to violate the law, full knowing the consequences.  See *People v. Braum*, 2020 Cal. App. LEXIS 446 (2020), in which a trustee landlord was personally liable for $6 million in civil penalties for resisting repeated attempts by the public entity to abate illegal activity at his Trust's property.

The Sonoma County Orders are a valid exercise of a reasonable and deferential standard that do not violate the California Constitution. As such, this claim should be dismissed without leave to amend.

## VI.    CONCLUSION

It is very likely due to the swift action by Governor Newsom and State Public Health Officer Sonia Y. Angell that California was saved some of the distress and anguish more seriously felt in states like New York.  It also very likely that due to similar swift action by Dr. Mase, with her scientifically based decisions on establishing restrictions for all County residents, that Sonoma County avoided the far more tragic outcomes felt even in the more populous Southern California counties. Even similar size counties such as Tulare County, who rushed to re-open, have suffered far more disease and death than Sonoma County.

Plaintiffs' Complaint challenging these valid and necessary Orders of the County Health Officer, fails to state any claim upon which relief could be granted against the County Defendants for the lawful exercise of health and safety powers to protect the public from COVID-19.  Accordingly, it is respectfully requested that the Court grant this Motion to Dismiss, without leave to amend.

Dated: June 23, 2020                            BRUCE D. GOLDSTEIN, County Counsel

By:   /s/ *Michael A. King*
             Michael A. King
             Deputy County Counsel
             Attorneys for County Defendants